**State Employes' Retirement Board v. O'Brien**

*Raymond Kleiman,* Deputy Attorney General, for plaintiff.

*Yates Most,* for defendant.

CRUMLISH, J. (Commonwealth Court, Specially Assigned), September 8, 1970.—Lt. Col. Robert E. O'Brien, USA (Ret.) has appealed an adjudication of the State Employes' Retirement Board which he

erroneously contends improperly limits his benefits as a retired employe of the Commonwealth.

Appellant was appointed a clerk by the Pennsylvania Liquor Control Board on December 30, 1933, at an annual salary of $1,380. On January 7, 1939, he transferred to the Department of Public Assistance (now Welfare) where he served as a zone supervisor at the annual salary of $2,100. On February 17, 1941, he entered the Pennsylvania National Guard and was called to active duty January 27, 1942. He served under Mandatory Executive Order until his eligibility for release in February 1946. There is no evidence in the record that he applied for discharge from active military duty at that time; on the contrary, he continued on active duty and on October 18, 1947, he applied for, and received, refund of his contributions to the State Retirement Fund. Likewise, on March 17, 1948, he applied for continuation of his active military status and it was renewed in 1951 for a period expiring September 30, 1954, at which time he was discharged. There is no evidence of the nature of his subsequent employment, if any, until May 9, 1961, when he was employed by Pennsylvania State University as an associate professor at an annual salary of $10,003.20. He retired from this employment with the Pennsylvania State University on July 1, 1967. There is no record of his salary at the date of military discharge or the pension benefits resulting therefrom.

The adjudication of the board in fixing appellant's retirement benefit held that appellant was entitled to a military service credit for a period from February 17, 1941, to February 1946, the period of compulsory military service; but that he was not entitled to credit for the balance of his military service which was voluntarily extended.

Appellant contends, however, that he should receive credit for military service from February 17, 1941,

until September 30, 1954. To support his position, he submitted a check when he was engaged by Pennsylvania State University to cover contributions he would have made to the fund had he continued in State service during that entire period.

He relies on section 207 of the State Employes' Retirement Code of June 1, 1959, P. L. 392, as amended, 71 PS §1725-207(1). This section, entitled "Credit for military service" provides that any State employe who, during the period from September 16, 1940, to July 27, 1954, entered the active military service of the United States "under a requisition from or by executive order of the President" shall be allowed credit for the period during which he was in active military service and salary deductions were paid into the fund during such active service or thereafter in accordance with the provisions of sections 301 and 302.

To evaluate the merit of Lt. Col. O'Brien's position, we must determine the intent of the legislature in its wise enactment of law concerning the rights and duties of all members of the State government and the rights of all the citizens whose tax support sustains their employes' rights.

The legislature contemplated a two-fold remuneration in encouraging faithful, dedicated, experienced personnel to move the wheels of government. First, an employe to perform at prime function must have economic security. With that, he then has the confidence and the willingness to adapt himself to constantly increasing demands. He develops a "know how" which in time becomes incalculable valuable experience. This is the second and vitally important consideration which the legislature measured. The need for long suffering fidelity to a cause could be met to some degree by a suitable pension program. The resultant benefit to the taxpayers is obvious.

We are reminded in the fulfillment of the purpose of the act that in time of national jeopardy it is right that the individual States should and must allow their employes to seek out or be sought to serve their country. But there must be clear national jeopardy calling for the maximum efforts of all its citizens, military and civilian alike on a daily basis. To this end, certain liberal advantages were offered to these State employes. Among them is the one upon which Lt. Col. O'Brien relies.

To undress the situation in which appellant places himself, we take notice that by his own admission he could have phased out of military service in 1946 but he elected to maintain the status he enjoyed. All of this time he served as a potential career officer, he was establishing valuable pension credit time with the Federal government which is now a vested interest. We would be naive if we believed that he did not calculate the value of an additional expanded pension when he returned to State government in 1961 after two repeated voluntary "commitments" in the Armed Service.

We think it inconceivable that the legislature, in its wise calculation of the affairs of the State employes and the interest of the taxpayers, would have considered as meritorious the situation of one, who, having left State employment for military service, cemented his departure by a series of acts including voluntary extensions of military service could then claim this kind of dual pension right.

To assume, as appellant did, that his situation is covered by the blanket generality "military service" in section 207 is erroneous when considering the act in its entirety. The act specifically limits eligibility to five years, thus recognizing the possibility of State employes using career military service as an opportunity to enhance retirement benefits.

In Etters v. State Employes' Retirement Board, 34 D. & C. 2d 757, 83 Dauph. 1 (1964), this court similarly expressed itself as to the rationale for granting retirement benefits to State employes rendering a military service obligation. In considering a like argument, under the Act of June 7, 1917, P. L. 600 (now repealed), the court said:

"The right to membership in the system is not and should not be equated to career officers or enlisted men who choose to remain in military service as a matter of personal preference. The legislature certainly did not intend to grant valuable retirement benefits to persons based upon service in the United States Armed Forces rather than service to the Commonwealth. In fact, the intention is clear that the legislature sought to grant valuable retirement benefits to State employes who render long and faithful service to the Commonwealth and not to career personnel of the United States Armed Forces."

In short, it is the judgment of this court that one cannot establish a base for pension benefits within the structure of the State retirement system, embark on a substantial military career with its attendant economic benefit, including Federal pension rights, and then return to State service and seek credit for all of the period of military service in calculation of his State retirement benefits.

We conclude that the adjudication of the board is amply supported by the record and that it correctly interprets the statute in question.

Accordingly, we make the following

### ORDER

And now, September 8, 1970, the adjudication of the State Employes' Retirement Board is affirmed, and the appeal is dismissed at the cost of appellant.